# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A black Cricket Idol Alcatel Onetouch cellular telephone and a black Cricket Galaxy Amp 2 cellular telephone currently in the custody of the Drug Enforcement Administration, located at 1721 Midpark Drive, Suite 300, in Knoxville, Tennessee | )<br>)<br>) Case No. 3:16-MJ-2116<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A black Cricket Idol Alcatel Onetouch cellular telephone and a black Cricket Galaxy Amp 2 cellular telephone currently in the custody of the Drug Enforcement Administration, located at 1721 Midpark Drive, Suite 300, Knoxville, Tennessee

located in the \_\_\_\_Eastern\_\_\_\_ District of \_\_\_\_Tennessee\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:
Evidence of a drug trafficking conspiracy and evidence of a money laundering conspiracy.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846, 841(a)(1), and 841(b)(1)(A) | Conspiracy to distribute methamphetamine |
| 18 U.S.C. Section 1956 | Conspiracy to commit money laundering |

The application is based on these facts:
Please see the Affidavit of DEA Task Force Officer Jeremy Newcome which is attached hereto and incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Trooper Jeremy Newcome*
Applicant's signature

Jeremy Newcome, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-21-16

*Bruce Guyton*
Judge's signature

City and state: Knoxville, Tennessee

H. Bruce Guyton, United States Magistrate Judge
*Printed name and title*

AFFIDAVIT

I, Jeremy W. Newcome, being duly sworn, depose and state as follows:

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Trooper with the Tennessee Highway Patrol (THP) since October 31, 2010. I have been assigned to the Drug Enforcement Agency (DEA) as a Task Force Officer (TFO) in the Knoxville, Tennessee, Resident Office since July 1, 2014. Previously, I was assigned to the Cookeville District Office of THP from March 2011 to June 2014. In the past, I have participated in numerous investigations of narcotics violations. I have experience and training in the debriefing of confidential sources (CSs) about drug trafficking, in surveilling persons involved in drug trafficking, and in conducting searches for controlled substances and records of drug trafficking activity.

2. I am familiar with the methods in which drug traffickers conduct their business, including but not limited to their methods of importing and distributing drugs, their use of conveyances in the conduct of their business, their use of cellular telephones (cell phones) and other cellular communication devices, their use of numerical codes and code words to conduct their transactions, and their methods of laundering drug proceeds. I know that drug traffickers oftentimes use cell phones to communicate about their drug trafficking activities (via telephone calls and / or text messaging) and that they oftentimes take photographs of their drugs, drug proceeds, and / or stash locations. I also know that drug traffickers oftentimes conceal drugs and / or drug proceeds in vehicles to avoid law enforcement detection when transporting drugs and /

1

or drug proceeds. I am also familiar with the methods that drug traffickers use to protect themselves, their drugs, and their assets from other criminals and law enforcement to include violence and threats of violence often through the use of firearms.

3. This affidavit is based on my personal knowledge and participation in this investigation, as well as through information I received from other police officers and/or from other individuals.

4. On August 4, 2016, Brian Dake (DAKE) was arrested for an outstanding warrant by the Anderson County Sheriff's Office. At the time of his arrest, he was found in possession of crystal methamphetamine, a pipe, digital scale, and a sum of United States currency. After being Mirandized, DAKE immediately began cooperating and informed law enforcement that the money in his possession was for the purchase of more crystal methamphetamine from this supplier, "Chris," who was later identified as Christopher Morgan (MORGAN). DAKE informed law enforcement that the deal with MORGAN has already been set up (prior to his arrest) and that MORGAN was planning to come to his hotel room (Room 211) at the Super 8 Motel on Park Place in Clinton, Tennessee, to deliver the drugs. DAKE informed law enforcement that MORGAN had been driving a black Nissan Maxima. A short time later, law enforcement observed a black Nissan Maxima pull into the parking lot of the motel and back into a parking space. MORGAN exited vehicle with a black backpack and began making his way toward Room 211. MORGAN approached Room 211 and knocked on the door. After waiting for a few minutes with no answer at the door, he began pacing back and forth. At this time, MORGAN saw a law enforcement officer approaching him, and he threw the backpack over the rail and began to run away. MORGAN was immediately detained and provided a written Miranda form and signed it.

5. A search of MORGAN's person revealed a pipe and United States currency. A search of MORGAN's backpack revealed a package of crystal methamphetamine and a large amount of United States currency. Law enforcement weighed the crystal methamphetamine and the gross weight is approximately 1.09 pounds.

6. After his arrest, MORGAN was interviewed at the hotel. During the interview, MORGAN told law enforcement that he had worked with DEA Agent Bubba Poston before and he would be willing to work with him again. MORGAN said that his supplier, Max Contreras (CONTRERAS), was in town from Arizona and that he had rented room number 123 at the Holiday Inn Express off 2903 Millers Pointe Drive in Morristown, Tennessee, for CONTRERAS (but he rented this room in a fake name). MORGAN said that he met CONTRERAS through an old supplier in Arizona.

7. MORGAN stated that CONTRERAS still lives in Arizona but MORGAN had rented him an apartment in Morristown, Tennessee, to be used as a stash house for drugs and money. MORGAN identified the apartment as being apartment 9 in the Norwood Apartment complex, located at 2621 Buffalo Trail in Morristown, Tennessee. However, the accurate address for the Norwood Apartment complex is 2429 Buffalo Trail, in Morristown, Tennessee. MORGAN explained that a guy named Gabriel stayed at the apartment and ran the apartment for CONTRERAS when CONTRERAS is not in town. MORGAN said that Gabriel is who he normally deals with but Gabriel had gone back to Mexico this week, and that was why CONTRERAS was in town. MORGAN said CONTRERAS arrived in Morristown on approximately August 4, 2016 and said that CONTRERAS has "pounds and pounds" of crystal methamphetamine at the apartment. MORGAN agreed he would call CONTRERAS tomorrow. MORGAN explained that CONTRERAS is listed as "Flaco" in MORGAN's phone.

8. On August 5, 2016, at the direction of law enforcement, MORGAN turned on his cell phone and had received a text message from CONTRERAS (which is the first message listed below). Law enforcement instructed MORGAN to respond and the following conversation occurred via text message:

| | |
|---|---|
| CONTRERAS: | Good morning brother are you up? |
| MORGAN: | Hey brother. |
| CONTRERAS: | I have your lunch ready okay brother. |
| MORGAN: | Ok. I'm up but not ready yet. Still have some more of that to get rid of first and a little more paper to collect. Should be today though. |
| CONTRERAS: | Okay a proverb I see you tonight. |

9. Law enforcement conducted surveillance and went back to the jail to talk with MORGAN. MORGAN agreed to continue communicating with CONTRERAS via text message. MORGAN and CONTRERAS had a text message exchange and, in general, the text message conversation started with MORGAN indicating that he was ready to purchase methamphetamine and CONTRERAS telling MORGAN that he was available. MORGAN said he would be there in twenty minutes and CONTRERAS said that was okay. Law enforcement confirmed, via court-authorized real-time cell site location information, that the cell phone being used by CONTRERAS was at the apartment 9 at the Norwood Apartment complex, which is where MORGAN said he would have been meeting CONTRERAS for this drug purchase if he was not in custody.

10. Prior to the last text message exchange between MORGAN and CONTRERAS, law enforcement had obtained a search warrant, authorizing the search of apartment 9 at the Norwood Apartment complex. After the last text message exchange, the search warrant was

4

executed. Approximately 4 pounds of crystal methamphetamine and approximately $22,000 in U.S. currency was found inside the cupboards in apartment 9 at the Norwood Apartment complex. Additionally, two black cell phones were found in apartment 9: one cell phone is a black Cricket Idol Alcatel OneTouch, which was located next to CONTRERAS on the couch, and the other cell phone is a Cricket Galaxy Amp 2, which was located on the kitchen counter. CONTRERAS was the only person inside apartment 9 when the search warrant was executed there. The two cell phones mentioned herein have been in the constant custody of law enforcement since the time they were seized by law enforcement and they currently are in the DEA's evidence room, located at 1721 Midpark Drive, Suite 300, in Knoxville, Tennessee.

11. Prior to CONTRERAS starting his operation in Tennessee, MORGAN said that one of the methods used by MORGAN to pay CONTRERAS for the methamphetamine provided by CONTRERAS is that MORGAN would mail the money via United States mail. The investigation has also revealed that MORGAN sent money using FedEx. When mailing the money, MORGAN said he would text a picture of the cash and a picture of the corresponding shipping label bearing the tracking number to CONTRERAS as proof that he sent money to CONTRERAS. Law enforcement has observed one photograph of stacks of money, a picture of money bands, and photographs of multiple mailing labels in MORGAN's cell phones.

12. In the past, MORGAN has agreed to cooperate with law enforcement, but it was later found that he had been conducting drug activity (selling drugs and sending money to Arizona) without law enforcement's knowledge, so law enforcement confronted him. MORGAN did not provide the truth as to his drug activity and, because he was untruthful, law enforcement stopped working with him. However, the recent information MORGAN provided about CONTRERAS is believed to be accurate because it was corroborated. First, pursuant to

court-authorized real-time cell site location information, the cell phone being used by CONTRERAS has been at the hotel that MORGAN said he rented for CONTRERAS and at the apartment where MORGAN claims the drugs are being housed. Second, law enforcement was conducting surveillance at the apartment and personally saw CONTRERAS exit and enter apartment 9 and the apartment directly to the left of apartment 9 within the Norwood Apartment complex. Third, the text message exchange provided above shows that MORGAN is in communication with CONTRERAS. Fourth, drugs and money were found in apartment 9, just like MORGAN said they would be and in locations within apartment 9 as had been previously explained by MORGAN.

13. On August 16, 2016, a federal Grand Jury returned an indictment charging CONTRERAS, MORGAN, DAKE, and others with conspiracy to distribute methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), and charging CONTRERAS and MORGAN with conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h). Both of these conspiracy charges were alleged to have occurred in or about March 2016 through on or about August 5, 2016. However, information from law enforcement in the District of Arizona, who had been conducting an investigation into CONTRERAS for years, indicates that CONTRERAS has been involved in drug trafficking for much longer than the charged time period.

14. Based upon the foregoing, probable cause exists to believe that evidence of a drug trafficking conspiracy, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), and evidence of a money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h) is currently contained

inside the two cell phones found within apartment 9 and seized on August 5, 2016. Therefore, authorization is requested to search the entirety of the two cellular telephones seized from within apartment 9 on August 5, 2016.

FURTHER AFFIANT SAITH NOT.

Executed this ____ day of September, 2016
at Knoxville, Tennessee.

_____
Jeremy W. Newcome
Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to before me
on this __21__ day of September, 2016.

_____
H. BRUCE GUYTON
UNITED STATES MAGISTRATE JUDGE